IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEIDRE SIMONA CASTILLO-RAEL,

    Plaintiff,

v.                                                                                               1:17-cv-00014-LF

NANCY A. BERRYHILL,[1] Deputy Commissioner
for Operations of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Deidre Simona Castillo-Rael's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 17), which was fully briefed on September 7, 2017. *See* Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the opinions of the non-examining state agency psychologists. I therefore GRANT Ms. Castillo-Rael's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Nancy A. Berryhill, the Deputy Commissioner for Operations of the Social Security Administration, is automatically substituted for the former Acting Commissioner of the Social Security Administration, Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Ms. Castillo-Rael was born in 1983, completed the eleventh grade, and later completed an EMT program. AR 36, 207, 258.[4] She had worked loading freight on airplanes, as a loss prevention associate, and as a personal trainer. AR 46, 258. Ms. Castillo-Rael filed applications for disability insurance benefits and supplemental security income on June 18, 2013, alleging disability due to post-traumatic stress disorder, anxiety, depression, and sleep apnea. AR 207–20, 257. The Social Security Administration ("SSA") denied her claims initially on August 13, 2013. AR 110–13. The SSA denied her claims on reconsideration on November 21, 2013. AR

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 10-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

118–24. Ms. Castillo-Rael requested a hearing before an ALJ. AR 125–26. On October 5, 2015, ALJ Eric Weiss held a hearing. AR 28–51. ALJ Weiss issued his unfavorable decision on December 11, 2015. AR 9–27.

At step one, the ALJ found that Ms. Castillo-Rael had not engaged in substantial, gainful activity since the earlier of her alleged onset dates.[5] AR 14. At step two, the ALJ found that Ms. Castillo-Rael suffered from the severe impairments of major depressive disorder, and panic disorder with agoraphobia. *Id.* At step three, the ALJ found that none of Ms. Castillo-Rael's impairments, alone or in combination, met or medically equaled a Listing. AR 15–16. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Castillo-Rael's RFC. AR 16–20. The ALJ found Ms. Castillo-Rael had the RFC to

> perform a full range of exertional work at all exertional levels but with the following nonexertional limitations: Able to perform the full range of exertional work as defined by the regulations. She is able to understand, remember and carry out simple instructions and make commensurate work related decisions, but not a production rate pace, in a work setting with few changes. She is able to occasionally interact with supervisors, co-workers and the public. She is able to maintain concentration, persistence, and pace for 2 hrs at a time during the workday with normal breaks.

AR 16–17.

At step four, the ALJ concluded that Ms. Castillo-Rael was unable to perform her past relevant work as an aircraft loader, a sales clerk, a personal trainer, or a surveillance systems monitor. AR 20. The ALJ found Ms. Castillo-Rael not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as addresser, flat

---

[5] On her application for Disability Insurance Benefits, Ms. Castillo-Rael stated that she became unable to work on March 1, 2013. AR 207. On her application for Supplemental Security Income, she stated she became unable to work on April 15, 2012. AR 214.

4

work tier,[6] and cleaner in an industrial setting. AR 21. On January 8, 2016, Ms. Castillo-Rael requested review of the ALJ's unfavorable decision by the Appeals Council. AR 7–8. On November 30, 2016, the Appeals Council denied the request for review. AR 1–6. Ms. Castillo-Rael timely filed her appeal to this Court on January 9, 2017. Doc. 1.[7]

### IV. Ms. Castillo-Rael's Claims

Ms. Castillo-Rael raises five arguments for reversing and remanding this case: (1) the ALJ failed to account for all of the moderate limitations found by consultative psychological examiner Dr. Louis Wynne; (2) the ALJ gave invalid reasons for rejecting the opinion of treating counselor Linda E. Friedman, LPCC; (3) the ALJ failed to properly weigh the opinions of the non-examining state agency psychologists; (4) the ALJ relied on improper factors in setting her RFC and finding that she was not disabled; (5) the vocational expert's testimony was unsupportable and unreliable. *See* Doc. 17. I find that the ALJ failed to properly weigh the opinions of the non-examining state agency psychologists. Because I remand based on this error, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

#### A. The ALJ failed to properly weigh the opinions of the non-examining state agency psychological consultants.

Ms. Castillo-Rael argues that the ALJ improperly rejected some of the moderate mental limitations in the opinions on the non-examining agency doctors. Doc. 17 at 13–14. She

---

[6] This work involves folding, stacking, counting, and wrapping ironed flatwork "such as sheets, pillowcases, and towels." DOT 361.587-010, available at https://occupationalinfo.org/36/361587010.html (last accessed May 23, 2018).

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

5

essentially argues that the ALJ impermissibly "picked and chose" from the moderate limitations in their opinions. *Id*. at 14.[8] The Commissioner did not respond directly to this claimed error. *See* Doc. 19. For the reasons discussed below, the Court finds that the ALJ's RFC assessment is not sufficiently clear to allow for meaningful judicial review of this argument.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide

---

[8] Part of Ms. Castillo-Rael's brief appears to be missing. *See* Doc. 17 at 15, where the first paragraph starts mid-sentence.

"appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

The ALJ's findings must be sufficiently specific to allow for meaningful review. *See Langley*, 373 F.3d at 1123. If the ALJ's decision is not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must also explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Id.* When the ALJ fails to provide an adequate narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart,* 72 F. App'x 781, 785 (10th Cir. 2003) (unpublished) ("Because the ALJ failed to make all the detailed findings required by the regulations and rulings at step four, his RFC conclusions are not supported by substantial evidence.").

On August 12, 2013, state agency psychologist Julian Lev, Ph.D. completed a Mental Residual Functional Capacity Assessment ("MRFCA"), opining that Ms. Castillo-Rael had the following limitations:

- Moderate limitation in the ability to understand and remember detailed instructions;
- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in the ability to respond to changes in the work setting;
- Moderate limitation in the ability to set realistic goals or make plans independently of others.

AR 63–65. In Section III of the MRFCA, Dr. Lev stated that "[c]laimant retains the capacity to understand, remember, and carry out simple but not detailed instructions and can relate appropriately to co-worker, supervisors, and the general public on an incidental basis." AR 65. On reconsideration, state agency psychologist Ralph Robinowitz, Ph.D. found identical moderate limitations and made identical Section III findings. AR 102–04.

The ALJ failed to discuss the opinions of Dr. Lev or Dr. Robinowitz in determining Ms. Castillo-Rael's RFC. *See* AR 16–20. The ALJ did not state what weight he gave either of the opinions. This was legal error. *See Keyes-Zachary*, 695 F.3d at 1161. The only reference the ALJ made to Dr. Lev's and Dr. Rabinowitz's opinions in the RFC assessment was to say that the RFC was "supported by . . . the opinions of the state agency physicians." AR 20. The ALJ did discuss Dr. Lev's and Dr. Rabinowitz's opinions at Step Three, concluding that "the opinions of the State agency physicians that the claimant's impairments neither met or equaled the severity of a listed impairment are well reasoned and supported by the evidence of record." AR 16. The ALJ, however, does not state how he weighed their opinions in the context of assessing Ms.

Castillo-Rael's RFC. The Commissioner claims that the ALJ gave the opinions "some weight" because the opinions are "supported by the record evidence, and are generally consistent with the RFC assigned by the ALJ." Doc. 19 at 8. The ALJ, however, did not state that he gave the opinions "some weight." In fact, the ALJ made no statement at all about what weight he gave the opinions of the state agency psychologists. The ALJ also offered no explanation of how or if he incorporated the numerous moderate limitations in their opinions into the RFC. *See* AR 16–20. This Court cannot rely on the post hoc explanations offered by the Commissioner. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

While Ms. Castillo-Rael argues that the ALJ impermissibly "picked and chose" from the limitations opined by the state agency psychologists, the ALJ's vague RFC discussion leaves the Court unable to meaningfully review this argument. In addition to failing to explain what weight he gave the state agency psychologists' opinions, the ALJ failed to adequately tie his RFC findings to the evidence. The ALJ's opinion does not include an adequate analysis which "include[s] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The ALJ found that Ms. Castillo-Rael could "understand, remember, and carry out simple instructions and make commensurate work related decisions, but not at a production pace, in a work setting with few changes." AR 16–17. While the ALJ summarized some of the medical evidence and Ms. Castillo-Rael's testimony, the ALJ did not adequately explain how the evidence he cited supported his RFC conclusions with

regard to these mental functions.[9] The ALJ's RFC finding is not fully consistent with Dr. Wynne's opinion, to which the ALJ assigned "great weight." AR 19. Dr. Wynne stated only that Ms. Castillo-Rael could "**read** and **understand** basic written instructions but her concentration and ability to persist at simple work tasks are moderately impaired." AR 334 (emphasis added). Thus, it is simply unclear from the ALJ's decision how he determined that Ms. Castillo-Rael was capable of "remember[ing], and carry[ing] out simple instructions and mak[ing] commensurate work related decisions, but not at a production pace, in a work setting with few changes." AR 16–17. It is similarly unclear how the ALJ determined that Ms. Castillo-Rael could "occasionally interact with supervisors, co-workers, and the public." AR 17. Dr. Wynne opined that Ms. Castillo-Rael "could not interact well with the general public, her

---

[9] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

coworkers, or her supervisors." AR 19, 334. Ms. Castillo-Rael testified that dealing with customers in her past jobs caused her to have increased panic attacks, and that when she had to deal with customers she would "blank out" and "start shaking" and "sweating." AR 34. She also testified that she has 6 to 10 panic attacks every day, which sometimes last ten minutes or more each. AR 39–40. The ALJ issued a blanket statement that his RFC is "supported by Dr. Wynne's opinions, the opinions of the State agency physicians, the infrequency of treatment, the absence of hospitalizations, [and] the claimant's noncompliance with medications." AR 20. This boilerplate conclusory list does not adequately explain how the ALJ concluded that Ms. Castillo-Rael could "occasionally interact with supervisors, co-workers, [or] the public." AR 17. Neither does the ALJ's finding that Ms. Castillo-Rael was "not entirely credible" shed any light on the ALJ's conclusions regarding these mental functions. AR 17. In this case, the Court is simply left to guess what evidence the ALJ relied on in assessing Ms. Castillo-Rael's RFC. This requires remand.

## VI. Conclusion

The ALJ erred in failing to explain the weight he gave the opinions of the state agency psychologists. The ALJ also failed to adequately tie his RFC findings to the evidence. The Court remands so that the ALJ can remedy these errors. The Court does not reach Ms. Castillo-Rael's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

11

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent